IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL NO. 3:26-CR-6-HTW-LGI

STEPHEN SPENCER PITTMAN

**RESPONSE IN OPPOSITION OF UNITED STATES
TO DEFENDANT'S MOTION TO REVOKE AND AMEND DETENTION ORDER**

The United States of America respectfully requests the Court to deny defendant's motion to revoke and amend detention order because the Magistrate Judge correctly concluded a detention hearing was warranted and that detention is necessary under the factors set forth in 18 U.S.C. § 3142(g). As set forth below, defendant's motion should be denied.

## FACTUAL BACKGROUND

In the early morning hours of Saturday, January 10, 2026, defendant intentionally set fire to the Beth Israel Congregation and the Goldring/Woldenberg Institute of Southern Jewish Life, both of which are located at 5315 Old Canton Road, Jackson, Mississippi, and he did so because of the religious character of the property. Federal authorities placed him under arrest that evening.

On Monday, January 12, 2026, a federal criminal complaint was filed against defendant for violating 18 U.S.C. § 844(i), which imposes criminal liability against "[w]hoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." *See* Complaint, Doc. 1. Later that same day, defendant's initial appearance was held on the criminal complaint, and the United States moved for detention pursuant to 18 U.S.C. § 3142(f)(1)(A) on the grounds that arson is considered a crime of violence. Defendant moved for a five-day continuance of the detention hearing.

The very next day, on Tuesday, January 13, 2026, a federal grand jury indicted defendant in

a single-count indictment for violating 18 U.S.C. § 844(i) (charge described above).

On Friday, January 16, 2026, defendant filed a motion for bond, *see* Motion for Bond [10], and the United States filed a response on Tuesday, January 20, 2026. *See* Response [11].[1]

A detention hearing was held on Tuesday, January 20, 2026. *See* **Exhibit 1**, Full Transcript. The United States Magistrate Judge correctly concluded the United States established it was entitled to a detention hearing pursuant to 18 U.S.C. § 3142(f)(2)(B) because there was a "serious risk that [defendant] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." The Magistrate Judge reached this conclusion after hearing the proffered testimony of the United States regarding the danger defendant would pose to his parents, who are prospective witnesses, as well as others. *Id.* at 12:19-13:21 and 18:1-6. After concluding the United States was entitled to a detention hearing, the Magistrate Judge concluded detention was necessary after applying the § 3142(g) factors to the evidence adduced at the hearing and the information contained in the pretrial services report. *Id*. at 41:12-46:24.

On February 3, 2026, defendant filed the instant motion for review of the Magistrate's decision regarding detention. [20].

On February 10, 2026, a federal grand jury returned a three-count superseding indictment against defendant for violations of 18 U.S.C. § 844(i) (charge described above and included in initial indictment), 18 U.S.C. § 247(a)(1) (damaging religious real property because of the race, color, or ethnic characteristics of any individual associated with that religious property), and 18

---

[1] See Motion and Response as additional reference points for the arguments raised by defendant and the United States on the question of whether detention should be imposed.

U.S.C. § 844(i) (use of fire to commit another felony, i.e., § 247(a)(1)). [21]

## LEGAL ANALYSIS

### 1. Standard of Review, Use of Transcript, and Federal Rules of Evidence

The review of a magistrate judge's detention order by a district court pursuant to 18 U.S.C. § 3145(b) is a *de novo* review and the district court "makes an independent determination of the proper pretrial detention or conditions for release." *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985).

When a full transcript of the detention hearing is provided, as here, "[r]eviewing a transcript of the detention hearing is an appropriate procedure to comply with [the review] obligation." *United States v. Wallace*, 3:21-cr-47-CWR-LGI, 2021 WL 4757482 at *1 (S.D. Miss. Oct. 12, 2021) (quoting *United States v. Faulkner*, No. 3:09-cr-249-D2, 2010 WL 1541355, at *1 n. 2 (N.D. Tex. Apr. 19, 2010)); *United States v. Jordan*, 3:18-cr-67-CWR-LGI, 2021 WL 1030996 at *4 (S.D. Miss. Mar. 17, 2021) (quoting *Faulkner*); *United States v. Jennings*, 3:19-cr-107-CWR-LRA, 2020 WL 3840032 (S.D. Miss. July 8, 2020) (quoting *Faulkner*); *see also United States v. Boyd*, 484 F. Supp. 2d 486, 487 (E.D. Va. 2007); *United States v. Rodriquez*, 2023 WL 6457800 (W.D. Va. Oct. 3, 2023) ("The court may rely on the record below and is not required to conduct an additional evidentiary hearing").

Federal Rule of Evidence 1101 provides that the Rules of Evidence, except for those on privilege, do not apply to detention hearings. *Id*. ("do not apply to…proceedings…considering whether to release on bail or otherwise"). Similarly, 18 U.S.C. § 3142(f) provides that "[t]he rules concerning admissibility of evidence in criminal trials do not apply the presentation and consideration of information at the hearing." *See also Fortna*, 769 F.2d at 250; *United States v. Lee*, 156 F.Supp.2d 620, 623 (E.D. La. 2001).

## 2. Establishing a Detention Hearing is Warranted

A detention hearing is held after a government's motion for detention pursuant to 18 U.S.C. § 3142(f) only when one or more of the seven circumstances listed (f)(1)(A), (f)(1)(B), (f)(1)(C), (f)(1)(D), (f)(1)(E), (f)(2)(A), and (f)(2)(B) is present. *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992); *see also United States v. Bedford*, --F.Supp.3d--, 2026 WL 81505 (N.D. Tex. Jan. 9, 2026).

## 3. After Establishing a Hearing is Warranted, Establishing Detention is Warranted

While a hearing can be held only if one of seven circumstances is present, detention can be ordered only after a hearing and if the factors set forth in 18 U.S.C. 3142 favor detention. *Byrd*, 969 F.2d at 109. The factors set forth in 18 U.S.C. § 3142(g) aid the court in determining whether any condition or combination of conditions will "reasonably assure the appearance of the person as required and the safety of any other person and the community." These factors include the following:

>  (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
>  (2) the weight of the evidence against the [defendant];
>
>  (3) the history and characteristics of the [defendant], including—
>
>  > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

        (B)    whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

    (4)    the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

## ARGUMENT

1. **A hearing was warranted pursuant to 18 U.S.C. § 3142(f)(2)(B) because of a serious risk of threat, injury, or intimidation against prospective witnesses; 18 U.S.C. § 3142(f)(1)(A) because arson is a crime of violence; and 18 U.S.C. § 3142(f)(1)(A) because arson in violation of 18 U.S.C. § 844(i) is an offense listed in 18 U.S.C. § 2332b(g)(5)(B).**

    a.  **This case involves a serious risk that defendant will threaten, injure, or intimidate a prospective witness, and therefore a hearing was warranted.**

Before the hearing was held, the United States proffered the following testimony:

> The government will proffer to the Court that it intends to elicit testimony from a Special Agent of the FBI that the FBI learned from the parents of the defendant that they were fearful of him, that that fearfulness of him scared the father from directly contacting law enforcement in the presence of the son because of what might happen, that the mother had wanted to and was planning to have the doors locked in the house, certain doors locked in the house because she was scared of the son. They are prospective witnesses in a future trial of the defendant. And because of that, that evidence and the risk, the government is obviously alleging that he set fire to Beth Israel, and because of other remarks the Court will hear about in a hearing, antisemitic[] remarks, the risk that he would pose to witnesses affiliated with Beth Israel and the Institute housed in that building, the government submits that a detention hearing and detention is also warranted under that second statute.

Transcript at 13:5-21. The Court correctly concluded that this proffer was sufficient to preliminarily establish a hearing was warranted pursuant to 18 U.S.C. § 3142(f)(2)(B). The Court deferred ruling on whether arson was a crime of violence under 18 U.S.C. § 3142(f)(1)(A), a second ground for a hearing advanced by the United States. *Id*. at 17:8-18:12.

After the proffer and once a hearing was underway, FBI Special Agent Ariel Williams

5

testified on behalf of the United States. Regarding this risk that defendant poses to his parents, who are prospective witnesses at a trial of this matter, she stated the following regarding the parents' fear of their son and how that fear impacted the father when he learned the morning of January 10 that defendant had set fire to Beth Israel:

> Q.   What have you learned about the father's decision-making process after he learned of these burns and where they came from and what steps he took next?
>
> A.   The father explained to the FBI that due to recent behaviors from the defendant, he was hesitant or afraid to contact law enforcement in front of the defendant. He spoke with his wife, had a conversation with her, and they devised a plan for her to take the defendant to the hospital separately so that the father could then contact law enforcement out of view of the defendant.
>
> Q.   What behavior had the father observed from the defendant that made him concerned and fearful?
>
> A.   The father expressed that there had been recent behavior changes in the defendant since he had come home from winter break from school, that he and his wife had experienced somewhat erratic behavior, antisemitic statements, things that made them uncertain of how he would react. And so for that reason, it contributed to them not wanting to contact law enforcement in front of him.
>
> Q.   What did the FBI learn from defendant's mother?
>
> A.   The mother, once we spoke with her -- the mother spoke with the FBI following the defendant being taken into custody and a search warrant being executed, and the mother expressed a sense of relief. She stated that they were at the point where the family pets were afraid of the defendant, and also that they were considering locking their doors, their bedroom doors at night due to fear of his behavior.

Transcript at 23:11-23:12.

Special Agent Williams' testimony on direct included the father's observations of the son, such as behavioral changes, erratic behavior, and antisemitic remarks. *Id*. Meanwhile, the mother reported to the FBI that pets who were afraid of defendant, a sense of relief that defendant had been taken into custody, and that the parents were considering locking their bedroom doors at night from

6

fear of defendant. *Id*. This fear also caused the parents to be fearful of contacting law enforcement in his presence. *Id*. While Special Agent Williams could not recall the exact phrases used by defendant when he was communicating that concerned the parents, she testified about behavioral patterns, and not just language, that scared the parents (although she did testify that antisemitic language was part of the array of factors that concerned them).

Special Agent Williams' testimony on cross-examination and redirect only underscores the threat that defendant poses and the parents' fear of him. She was questioned regarding a recent incident when defendant bowed-up to the father after speaking offensively before the mother, as well as any fears the parents expressed when law enforcement were recently at their home to serve warrants. Transcript, at 28:11-29:13 and 30:7-15. When defendant posed a physical risk to his father by bowing-up to him, it was his father who had to diffuse the situation. *Id*., at 33:18-24. When warrants were served on defendant's parents' home recently, the parents might not have exhibited fear at that point in time – but defendant at that point was in federal custody and of no risk to the parents. *Id*. at 34:1-10. Why would they be fearful at that point? He was in custody.

Defendant argues the evidence is insufficient because it focuses on past conduct, but that past conduct is a sufficient indicator that there is a "serious risk that [defendant] will…threaten, injure, or **intimidate**, or attempt to threaten, injure, or **intimidate**, a prospective witness or juror." (bold added). 18 U.S.C. § 3142(f)(2)(B). Defendant lived with the parents. They were scared of him – scared enough that they would not and did not contact law enforcement in his presence when they learned he set fire to Beth Israel and the Institute of Southern Jewish Life, but, instead, concocted a plan to get him to the hospital so law enforcement could be contacted outside of this presence. Transcript, at 23:16-20 ("He spoke with his wife, had a conversation with her, and they devised a plan for her to take the defendant to the hospital separately so that the father could then contact law

7

enforcement out of view of the defendant.").

All of the above and the other testimony available in the transcript support the determination of the Magistrate Judge that a detention hearing was appropriate pursuant to 18 U.S.C. § 3142(f)(2)(B).

### b. Arson is a crime of violence, and therefore a hearing was warranted pursuant to 18 U.S.C. § 3142(f)(1)(A).

The Magistrate Judge declined to answer the question of whether arson is a crime of violence. Although the decision of the Magistrate Judge can be affirmed on the grounds a hearing was warranted pursuant to 18 U.S.C. § 3142(f)(2)(B), a hearing was also warranted pursuant to 18 U.S.C. § 3142(f)(1)(A) because arson is a crime of violence under 18 U.S.C. § 3156(a)(4).

A crime of violence is defined in 18 U.S.C. § 3156(a)(4)(A) and (B) as:

(A)     An offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another;

(B)     Any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.[2]

Sub-provision (A) is known as the "elements clause," and sub-provision (B) is known as the "residual clause." *See e.g.*, *United States v. Liccardi*, Criminal No. 3:21-MJ-1152-BK, 2022 WL 260809 at *4 (N.D. Tex. Jan. 25, 2022).

Numerous courts have determined arson to be a crime of violence in the context of detention hearings, *See*, *e.g.*, *United States v. Walker*, Case No. 23-CR-141-JFH, 2023 WL 3197712 (N.D. Okla. May 2, 2023) ("Although the Tenth Circuit has not directly addressed the question, several courts have held that arson is a "crime of violence" under [§ 3156]"); *United States v. Chippewa*,

---

[2] There is a subsection (C), but it is not relevant here.

8

Case No. 21-CR-337-JFH, 2023 WL 1778339 at n. 1 (N.D. Okla. Feb. 6, 2023); *Marzullo*, 780 F. Supp. at 662 & n. 7 (W.D. Mo. 1991); *United States v. Shaker*, 665 F. Supp. 698 at n. 4 (N.D. Ind. 1987); *see also United States v. Mitchell*, 23 F.3d 1 (1st. Cir. 1994) (conspiracy to commit arson and aiding and abetting arson considered crimes of violence under § 3156(a)(4)).[3]

### (i) The Fifth Circuit has not addressed whether the categorical approach applies to detention hearings, but regardless of whether it does, arson is a crime of violence.

The United States Court of Appeals for the Fifth Circuit has not addressed whether the categorical approach applies to detention hearings. *United States v. Scott*, No. EP-14-CR-PRM, 2014 WL 4403162 (W.D. Tex. July 28, 2014) ("The Fifth Circuit is silent on whether the categorical approach should be used to determine whether a crime constitutes a crime of violence pursuant to the Bail Reform Act…."). At least two district courts within the Fifth Circuit have applied the categorical approach in the detention hearing context. *See id*. at *2; *United States v. Kirkland*, No. CRIM. A. 99-143, 1999 WL 329702 at *2 (E.D. La. May 21, 1999). However, at least one district court within the Fifth Circuit has declined to apply the categorical approach in the detention hearing context. *See Liccardo*, 2022 WL 260809 at *4 ("the court is not inclined to use

---

[3] The United States Sentencing Guidelines, § 4B1.2(a)(1) and (2), provide an additional definition for a crime of violence, and define it to include crimes punishable by imprisonment for more than one year that:

(1) Has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(2) Is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, **arson**, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G., § 4B1.2(a) (bold added). As is facially apparent from the definition in the U.S.S.G. that governs the sentencings of defendants who are found guilty, arson is considered a crime of violence in the context of sentencings.

either the categorical or modified categorical approach here"). Regardless of whether the categorical approach applies, the result should be the same: arson is a crime of violence for detention purposes.

### (ii) Arson is considered a crime of violence under the residual clause, and it is constitutional to apply that definition in the context of detention hearings.

Assuming the categorical approach applies, arson is not a crime of violence under § 3156(a)(4)(A), the elements or force clause, because one can be guilty of arson by burning his or her own property. *See United States v. Mathews*, 37 F.4th 622, 625-26 (9th Cir. 2022) (discussing the elements/force clause in the 18 U.S.C. § 924(c) context); *United States v. Wilder*, 834 Fed.Appx .782, 784 (4th Cir. 2020) (same). **However**, arson is a crime of violence under the residual clause of § 3156(a)(4)(B) because arson involves a "substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

In *Marzullo*, the district court reached this conclusion when it found that *even though defendant burned his own property*, the arson involved a substantial risk of physical force against the person or property of another:

> It seems beyond question that the application of fire or explosives to a building in an attempt to destroy or damage it is tantamount to applying physical force against that property. Defendants argue that since the building in question was "owned" by Defendant Marzullo it was not "property of another" as required by the statute. Looking to the "nature" of the crime of arson, however, it seems clear that the offense ordinarily carries with it a substantial risk to the "property of another." The usual fact is that arson for profit committed by the "owner" risks more than his or her own property. First, to the degree that lenders or vendors of the "owner" have security interest in the building or its contents, their property must be at risk. Additionally, any items left in the store on a consignment basis amount to "property of another" that is put at risk. Finally, with an arson fire, there is always the risk that it will spread beyond the intended target and involve surrounding property or properties.
>
> It is also the case, that arson routinely involves a substantial risk to the "person of another." As noted above, the risk that the fire will impinge upon other structures may include the spread to occupied structures, putting the "person of another" at risk. There is also the risk that firefighting personnel or investigative personnel will be

10

> injured by physical force while extinguishing the fire or investigating the fire scene. Accordingly, after examination of the statutory language, this Court concludes that arson is a "crime of violence" as defined by 18 U.S.C. § 3156.

*Id*. at 663.

The same is true here. There was a substantial risk that defendant's arson could have spread to other structures (a residential neighborhood is behind the facility and another large building in the adjoining parking lot). Firefighting and investigative personnel could have been injured. And this was, in fact, the property of another, both the building and the property within it. However, as *Marzullo* makes plain, even if this was a defendant's own property, it still is the case that arson involves a substantial risk of physical force against the person or property *of another*.

The residual clause is constitutional in the detention hearing context. This was explored by a district court in the United States Court of Appeals for the Fifth Circuit in *Liccardi*, 2022 WL 260809 at n. 7. The district court in *Liccardi* correctly concluded that while the residual clause had been declared unconstitutionally vague in the context of statutes that define criminal offenses or fix the permissible range of sentences (such as § 924(c), the statute at issue in the cases cited by defendant), the clause is not subject to void-for-vagueness challenges in the detention hearing context because these standards merely guide the exercise of a court's discretion, similar to the Sentencing Guidelines (which, again, define arson as a crime of violence). *See Beckles v. United States*, 580 U.S. 256 (2017) (holding that the residual clause in the definition of a "crime of violence" in the Sentencing Guidelines is not subject to a void-for-vagueness challenge).

Likewise, in *United States v. Watkins*, 940 F.3d 152, 155 and 159-161 (2nd Cir. 2019), the United States Court of Appeals for the Second Circuit rejected a defendant's argument that the residual clause in the definition of a "crime of violence" was subject to a void-for-vagueness challenge. *Id.* ("In sum, because § 3142(f)(1) does not define criminal offenses, fix penalties, or

11

implicate the dual concerns underlying the void-for-vagueness doctrine, it is not amenable to a due process challenge and is therefore not unconstitutionally vague.")

Defendant cites *Sessions v. Dimaya*, 584 U.S. 148 (2018) in support of his argument that the residual clause in unconstitutional, but *Sessions* is not in the detention hearing context. In *Licardi* and *Watkins*, discussed above, courts found the residual clause constitutional in the detention hearing context, and they did so after the *Sessions* decision.

Accordingly, a detention hearing was also warranted pursuant to 18 U.S.C. § 3142(f)(1)(A) because arson is a crime of violence.

### c. This Court should find that a rebuttable presumption of detention applies to this case pursuant to 18 U.S.C. § 3142(e)(3)(C) because arson in violation of 18 U.S.C. § 844(i) is an offense listed in 18 U.S.C. § 2332b(g)(5)(B).

Arson in an offense listed in 18 U.S.C. § 2332b(g)(5)(B). This provides an additional ground for why a detention hearing was warranted pursuant to 18 U.S.C. § 3142(f)(1)(A),[4] and a basis for a rebuttable presumption of detention to apply pursuant to 18 U.S.C. § 3142(e)(3)(C).[5] It appears

---

[4] 18 U.S.C. § 3142(f)(1)(A) states:

> (f) Detention Hearing.—The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community—
>
> > (1) upon motion of the attorney for the Government, in a case that involves—
> >
> > > (A) a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

§ 2332b(g)(5)(B) plainly lists "844(i) (relating to arson and bombing of property used in interstate commerce)." The statutory penalty for § 844(i) includes a maximum term of imprisonment of 20 years.

[5] 18 U.S.C. § 3142(e)(3)(C) states:

> (3) Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the

there are no reported decisions in the Fifth Circuit on this point. On a *de novo* review, this Court may consider whether a rebuttable presumption should apply even though the argument was not raised before the Magistrate Judge. The Court should conclude that it does.

In *United States v. Renford*, 20-CR-80-A, 2020 WL 4333337 (W.D.N.Y. July 28, 2020), the District Court in the Second Circuit stated:

> Under the Bail Reform Act, a judicial officer's finding that there is probable cause to believe that the defendant violated any of a specified group of statutes gives rise to a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(C). The charged offense of arson in violation of 18 U.S.C. § 844(i) is among them as an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed. See 18 U.S.C. § 3142(f)(1)(A). A grand jury indictment alone, such as the one returned here against Defendant, establishes probable cause and no independent finding of probable cause by the Court is necessary. *See United States v. Contreras*, 776 F.2d 51, 55 (2d Cir. 1985). It is undisputed that the rebuttable presumption applies in this case.

*Id*. at *4. The Court of Appeals for the Second Circuit affirmed the order. No. 20-2628, 2020 WL 6552073 (2nd. Cir. Sept. 17, 2020). In *United States v. Grabinski*, 2025 WL 819570 (D.C. March 13, 2025), a district court in the District of Columbia reached the same conclusion. *Id*. at *2 ("The presumption applies here, as Grabinski is charged with arson in violation of 18 U.S.C. § 844(i). *See* 18 U.S.C. §§ 3142(e)(3)(C); 18 U.S.C. § 2332b(g)(5)(B)."). [6]

---

  person committed—

  (C) an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed;

6  There are other district court opinions that conclude arson is not a listed offense under 18 U.S.C. § 3142(e)(3), but they do not appear to look specifically to 18 U.S.C. § 3142(e)(3)(C) to analyze the cross-reference to § 2332b(g)(5)(B) to determine whether arson is an offense listed in 18 U.S.C. § 2332b(g)(5)(B). Rather, they appear to conclude, without examining the cross-referenced § 2332(b)(5)(B), that arson is not an offense listed in § 3142(e)(3). *See United States v. O'Donnell*, Case No. 20 CR 260, 2020 WL 3058098 (N.D. Ill. June 9, 2020), United *States v. Varnes*, No. 10-0203M, 2010 WL 2035573 (D. Ariz. May 20,

Defendant may argue that the list of crimes in § 2332b(g)(5)(B) is limited by § 2332b(g)(5)(A) or another provision of § 2332b, but that is not what § 3142(e)(3)(c) states. It plainly states "an offense **listed** in section 2332b(g)(5)(B)." (bold added). It says nothing of § 2332b(g)(5)(A) or any other provision in § 2332b limiting application of the list. Additionally, 18 U.S.C. § 3142(e)(3)(B) *does* expressly provide for "an offense under section…2332b of this title," which indicates that in § 3142(e)(3)(B) an offense is contemplated that is not simply the list of offenses in § 2332b(g)(5)(B). Section 3142(e)(3)(C), however, by its very terms points simply to the lists of offenses, which includes arson in violation of 18 U.S.C. § 844(i).

Defendant has been indicted for arson in violation of 18 U.S.C. § 844(i), both in the original indictment and superseding indictment. Therefore, pursuant to 18 U.S.C. § 3142(f)(1)(A), a detention hearing was warranted because arson in violation of 18 U.S.C. § 844(i) is an offense listed in § 2332b(g)(5)(B). Additionally, a rebuttable presumption applies to the facts of this case pursuant to 18 U.S.C. § 3142(e)(3)(C) and provides an independent basis for this Court to affirm the ongoing detention of the defendant.

2. **The Magistrate's Findings Supporting Detention.**

After correctly concluding that a hearing was warranted, the Magistrate Judge correctly concluded that defendant should be detained by applying the § 3142(g) factors to the evidence before it. The Court's findings are set forth at 41:12-46:24 of the Transcript.

In summary, as to the nature and characteristics of the offense, the Court noted the offense carries a "potentially lengthy period of incarceration if the defendant were to be convicted of the same," *Id*. at 43:1-3, and that the "allegations involve a fire that was set at Beth Israel Synagogue in

---

2010); *United States v. Shaker*, Crim. No. HCR 87-65-02 (N.D. Ind. July 16, 1987).

Jackson, Mississippi." *Id*. at 43:4-5. Regarding the weight of the evidence, the Court noted that location data from a Life360 application recorded defendant's presence at Beth Israel; the text exchanges between defendant and his father; the father saw burns on defendant's hands and ankles on January 10 after the fire; and that defendant admitted to his father and the FBI that he set fire to Beth Israel. Additionally, associates of defendant informed the FBI that defendant had expressed a desire to burn a synagogue, with one person providing defendant expressed this desire only a day before the burning of Beth Israel and the Institute of Southern Jewish Life. Id. a 43:16-44:2. As to the history and characteristics of the defendant, the Court noted, among other factors to consider, defendant's marijuana use, use of antisemitic language, the behavior of defendant and parents' fear of him, the pets' fear of defendant, the parents' considering locking their bedroom door out of fear of defendant, and the parents' sense of relief he had been put in custody. *Id.* at 44:19-45:8. Finally, as the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release, the Court noted a United States Senate report issued in conjunction with the Bail Reform Act that specifically noted its "concern about safety be given a broader construction than merely danger of harm involving physical violence." *Id*. at 45:21-22. The Court also expressed a specific concern that defendant poses a "concrete prospective threat to public safety," and that such a prospective threat was recognized by the D.C. Circuit as sufficient to support a finding that a defendant poses a danger to the community. *Id.* at 46:2-8.

    The Magistrate Judge's finding of detention should be affirmed.

## CONCLUSION

Defendant's motion should be denied, and he should remain in custody pending trial.

                        Respectfully submitted,

                        J.E. BAXTER KRUGER
                        UNITED STATES ATTORNEY

By:   */s/Matt Allen*
       MATTHEW W. ALLEN, MSB. NO. 101605
       Assistant United States Attorney
       501 E. Court Street, Suite 4.430
       Jackson, Mississippi 39201
       Phone: 601.965.4480
       Email: Matthew.Allen2@usdoj.gov