IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                               CRIMINAL NO. 3:26-CR-6-HTW-LGI

STEPHEN SPENCER PITTMAN

**REPLY SUPPORTING MOTION TO REVOKE AND AMEND DETENTION ORDER**

Stephen Spencer Pittman, by counsel, submits this reply supporting his motion to revoke and amend the magistrate's detention order. *See* Motion to Revoke and Amend Detention Order, ECF 20 ("Motion").

**ARGUMENT**

I.   **The Bail Reform Act does not authorize a detention hearing.**

The Government offers three rationales for its right to a detention hearing, but none persuades.

   A.   **There is no serious risk that the defendant will threaten, injure, or intimidate a prospective witness.**

The Government's evidence failed to prove that Mr. Pittman's release poses a "serious" risk that he would threaten, injure, or intimidate a prospective witness. *Contra* Response in Opposition of United States to Defendant's Motion to Revoke and Amend Detention Order, ECF 23 ("Response"). First, the Government's evidence was too vague. Special Agent Williams admitted that Mr. Pittman's father "didn't mention a specific threat" made by Mr. Pittman. ECF 23-1 at 28:18–19.[1] And Mr. Pittman's mother likewise spoke of "offensive statements, and … behavior." ECF 23-1 at 29:4–7.

---

[1] Citations to the transcript follow this format: ECF 23-1 at [page number found in the top right-hand corner]:[line numbers for referenced testimony].

1

The only specific proof the Government can muster is testimony about a time when Mr. Pittman allegedly bowed up to his father. Response at 7. But the Government offered no testimony about when that incident occurred. *See* ECF 23-1 at 28:20 (calling it a "previous incident"). And Agent Williams admitted that the incident did not evolve into a physical reaction by Mr. Pittman. ECF 23-1 at 29:2–3.

Second, the Government's evidence was unreliable. The Government chose not to call Mr. Pittman's parents to testify; it chose instead to call a witness who had never even spoken to Mr. Pittman's parents. *See* ECF 23-1 at 26:20–23 (confirming that Special Agent Williams did not interview Mr. Pittman's parents). Those choices meant that the court lacked key information about the demeanor and credibility of Mr. Pittman's parents.

True, hearsay evidence is admissible in bond hearings. *See* Response at 3. But hearsay's admissibility "should not be taken to mean that information must be accepted by the court without regard to its reliability." 4 W. LaFave, J. Israel, N. King, O. Kerr, A. Leipold, Criminal Procedure § 12.1(d) (4th ed.). A court should still consider whether the evidence is the "kind of evidence on which responsible persons are accustomed to rely in serious affairs." *Id.* (quoting *Bates v. Ogata*, 482 P.2d 153 (Haw. 1971)).

The Government's evidence is woefully inadequate. The only evidence before the court is second-hand testimony about the parents' discomfort with Mr. Pittman's alleged behavior and comments. The lion's share of the testimony focuses on the parents' feelings and reactions without any corroborating details about the behavior or comments that prompted those reactions. As a result, the Court cannot determine whether Mr. Pittman's alleged behavior and comments were objectively intimidating.

The Government has identified one specific incident—that Mr. Pittman allegedly bowed up to his father—but that testimony cuts against the Government. Though the father feared that Mr. Pittman would react physically, the incident did not escalate in the manner he expected. ECF 23-1 at 29:2–3. The testimony shows that the father's fears were unwarranted.

The Government's evidence is insufficient to support a finding that the defendant presents a serious risk of witness intimidation.

### B. Arson is not a crime of violence.

The Government claims that arson is a crime of violence under the residual clause. Response at 10–12. This Court should reject that argument for two reasons.

First, the residual clause is void for vagueness. *See Sessions v. Dimaya*, 584 U.S. 148, 152 (2018) (holding that the residual clause is void for vagueness in the context of civil removal proceedings)*; United States v. Davis*, 588 U.S. 445, 448 (2019) (holding that the residual clause is void for vagueness in the context of 18 U.S.C. § 924(c)).

The Government claims that the residual clause is valid in the context of bond hearings, *see* Response at 11–12, but Supreme Court precedent rebuts that argument. In *United States v. Salerno*, 481 U.S. 739, 750 (1987), the Court recognized an "individual's strong interest in liberty." The Court upheld the Bail Reform Act against due process challenges in part because of "Congress' careful delineation of the circumstances under which detention will be permitted." *Id*. at 751. The Court emphasized that "[t]he judicial officer is not given unbridled discretion in making the detention determination." *Id*. at 742.

The residual clause upsets that careful balance. The clause is marred by at least two features that make its enforcement "unpredictab[le] and arbitrar[y]." *See Johnson v. United States*, 576 U.S. 591, 602 (2015). It creates "grave uncertainty about how to estimate the risk posed by a crime"

3

because "[i]t ties the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Id*. at 597. And it "leaves uncertainty about how much risk it takes for a crime to qualify." *Id*. at 598. Because the clause invites unpredictable and arbitrary enforcement, it offends due process in the context of pretrial detention hearings.

Second, even if the Court could consider the residual clause, arson does not qualify. *See* Motion at 6–7. Because the residual clause uses the language "against another" to modify the use of physical force, *see* 18 U.S.C. § 3156(a)(4)(B), this Court must analyze whether arson, by its nature, involves a substantial risk of *intentional* physical force against the person or property of another. *See Borden v. United States*, 593 U.S. 420, 445 (2021). Under that standard, the reasoning of *United States v. Marzullo*, 780 F. Supp. 658 (W.D. Mo. 1991) is suspect. *Contra* Response at 10–11. The *Marzullo* court focuses on risks that involve reckless or negligent force, such as when a fire spreads to other structures or harms firefighters or safety personnel.[2] These examples do not involve *intentional* force against the person or property of another.

C.  **Section 3142(e)(3)(C) does not apply.**

Section 3142(e)(3)(C) establishes a rebuttable presumption of pretrial detention for certain enumerated offenses when a defendant commits them as part of a federal crime of terrorism. It incorporates by reference the "offenses listed in section 2332b(g)(5)(B) of title 18, United States Code." Section 2332b(g)(5), in turn, defines a "Federal crime of terrorism" as one that is (A) "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct;" and (B) is a violation of certain enumerated federal statutes.

---

[2] The *Marzullo* court also discussed a risk of physical force against the property of lenders or vendors. *See Marzullo*, 780 F. Supp. at 663. These examples ignore that the arson statute criminalizes the destruction of property owned by the defendant. *See United States v. Mathews,* 37 F.4th 622, 626 (9th Cir. 2022).

4

By incorporating § 2332b(g)(5)(B), § 3142(e)(3)(C) incorporates the context of § 2332b(g)(5)(B), which relates to federal terrorism crimes. *See* § 2332b(g)(5).

The statutory title and section heading of § 3142(e)(3)(C) confirm this interpretation. The Supreme Court has "long considered that the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." *Dubin v. United States*, 599 U.S. 110, 120–21 (2023) (quotation and marks omitted). Section 3142(e)(3)(C) was enacted as part of the "Pretrial Detention of Terrorists Act of 2004," which in turn was part of the "Intelligence Reform and Terrorism Prevention Act of 2004." *See* § 6951, 118 Stat. 3638. As a section heading for § 3142(e)(3)(C), Congress chose "Presumption for Pretrial Detention in Cases involving Terrorism." § 6952, 118 Stat. 3638. These textual clues confirm Congress's intent that § 3142(e)(3)(C) apply to offenses that constitute federal terrorism crimes.

## II. The BRA does not authorize detention.

The Government must show, by clear and convincing evidence, that Mr. Pittman's release poses a risk of danger or witness intimidation. *See* § 3142(f)(2) ("The facts the judicial officer uses to support a finding … that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence."); *United States v. Khalaf*, 59 F.3d 1243 (5th Cir. 1995) ("An order of detention premised on the danger to others due to the accused's threats or attempts to threaten or intimidate potential witnesses must be supported by clear and convincing evidence."). Clear and convincing evidence is "a weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Galaviz v. Reyes*, 95 F.4th 246, 256 (5th Cir. 2024) (quotation and quotation marks omitted).

5

The Government has not met its burden. In support of detention, the Government repeats vague, second-hand allegations of offensive comments and erratic behavior. Response at 15. For the reasons explained *supra* at 1–2, this evidence falls short of establishing a risk of danger or witness intimidation.

And even if the Court credited every statement made by Mr. Pittman's parents, the Government still could not justify detention. There is strong evidence that Mr. Pittman can be safely released. Among other things, he has no criminal history, he has an appropriate education, and he has strong ties to the Jackson metropolitan area. *See* Exhibit G-1 to Initial Appearance, Arraignment, and Detention Hearing. The Government does not meaningfully rebut these protective factors.

And this Court can impose conditions of bond to reasonably assure Mr. Pittman's appearance and the safety of the community. Among other things, the Court could impose home detention, electronic monitoring, and restrictions on witness contact to mitigate any risk of future danger or witness intimidation. There is no indication that the magistrate judge considered these potential conditions before entering the detention order, and the Government offers no reason to doubt the efficacy of these conditions.

## CONCLUSION

The Government has not met its burden to obtain a detention hearing. At the very least, this Court can craft conditions that will reasonably assure Mr. Pittman's appearance as directed and the safety of the community. We respectfully request his release.

Respectfully submitted, this the 23rd day of February, 2026.

**Omodare B. Jupiter**
Federal Public Defender

*Michael L. Scott*
**Michael L. Scott** (MB # 101320)
Assistant Federal Public Defender
N. and S. Districts of Mississippi
200 S. Lamar St., Suite 200 North
Jackson, Mississippi 39201
Telephone: (601)948-4284
Facsimile: (601)948-5510
Email:  mike_scott@fd.org

Attorney for Defendant

## CERTIFICATE OF SERVICE

I, Michael L. Scott, certify that on February 23, 2026, this Reply was filed with the Clerk of the United States District Court for the Southern District of Mississippi, using the electronic case filing system, which in turn sent an electronic copy of this Motion to all attorneys of record in this case.

*Michael L. Scott*
**Michael L. Scott**
Attorney for Defendant