IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V. CRIMINAL NO. 3:26-CR-6-HTW-LGI

STEPHEN SPENCER PITTMAN

**REPLY SUPPORTING SECOND MOTION TO DISMISS COUNT TWO**

The defendant, STEPHEN SPENCER PITTMAN, submits this reply supporting his second motion to dismiss count two [ECF 47] ("Motion").

1. Two forthcoming opinions by the Fifth Circuit could influence or control the outcome here. In *United States v. Rowold*, No. 26-60074 (5th Cir. Feb. 19, 2026), the Fifth Circuit will address a plain-error claim that 18 U.S.C. § 247 is facially unconstitutional. And in *United States v. Squire*, No. 25-30324 (5th Cir. May 28, 2025), the en banc Fifth Circuit will address a claim that the felon-in-possession statute, §18 U.S.C. § 922(g)(1), unconstitutionally exceeds Congress's authority under the Commerce Clause. *See* Order, *United States v. Squire*, No. 25-30324 (5th Cir. July 20, 2026). *Squire* could clarify the appropriate analysis for Mr. Pittman's Commerce Clause challenge, and it could provide guidance on the role of a jurisdictional element in that analysis.

2. This Court should reject the government's attempt to justify the constitutionality of § 247 as a regulation of "the use of the channels of interstate commerce" or "the instrumentalities of interstate commerce, or persons or things in interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558–59 (1995). Section 247(a)(1)'s plain language prohibits an individual from "intentionally defac[ing], damage[ing], or destroy[ing] any religious real property, because of the religious character of that property, or attempt[ing] to do so." On its face it does not regulate the

use of the channels of interstate commerce, the instrumentalities of interstate commerce, or persons or things in interstate commerce. Had Congress intended it to cover those categories, it knew how to write the statute to do so. *See* Motion at 2–3.[1]

The government argues that the amended version of § 247 invokes the first two *Lopez* categories because it penalizes offenses "in commerce." Response at 6 (citing *United States v. Ballinger*, 395 F.3d 1218, 1231 (11th Cir. 2005)). But "[m]erely because Congress chooses to prohibit the church arson that is 'in' interstate commerce does not mean that there is such a crime." *Ballinger*, 395 F.3d at 1256 (Hill, J., dissenting). The statute penalizes arson itself rather than travel or use of interstate channels or instrumentalities to accomplish arson, and the government offers no examples of how the arson itself could be "in commerce."

3. Section 247 is not a valid exercise of the power in *Lopez*'s third category. It suffers many of the same frailties that doomed the statutes at issue in *Lopez* and *United States v. Morrison*, 529 U.S. 598 (2000). First, arson of religious property is not commercial or economic in nature, a fact that the government concedes. *See* Response at 12 (conceding that the "regulated activity is not economic or commercial in nature"). The Supreme Court has explained that its "review of Commerce Clause case law demonstrates that in those cases where we have sustained federal regulation of intrastate activity based upon the activity's substantial effects on interstate commerce, the activity in question has been some sort of economic endeavor." *Morrison*, 529 U.S. at 611; *see also id.* at 610 ("[A] fair reading of *Lopez* shows that the noneconomic, criminal nature of the conduct at issue was central to our decision in that case.").

---

[1] As the Government's brief concedes, the original enactment of § 247 explicitly invoked the first two *Lopez* categories by punishing arson of a religious property if the offense involved "travel[] in interstate or foreign commerce" or the use of "a facility or instrumentality of interstate or foreign commerce." Response at 5 (citing Pub. L. No. 100-346, § 1, 102 Stat. 644 (1988)). Congress amended the statute to eliminate the language that invoked the first two *Lopez* categories.

Second, the statute's jurisdictional element is ineffective. When a jurisdictional element provides the sole asserted limitation on a statute regulating otherwise noneconomic conduct, the element must confine the statute's application to conduct within Congress' enumerated commerce power. *See Lopez*, 514 U.S. at 561; *Morrison*, 529 U.S. at 611–13. The jurisdictional element here makes the statute applicable to arson of a religious property when that offense is "in or affects interstate or foreign commerce." 18 U.S.C. § 247(b). That language does not restrict the reach of the statute to activity that substantially affects interstate commerce as required by *Lopez* and *Morrison*.

Third, the legislative findings do not justify § 247(a)(1). In *Morrison*, the Court found that the federal civil remedy for victims of gender-motivated violence exceeded Congress' power under the Commerce Clause despite "numerous findings regarding the serious impact that gender-motivated violence has on victims and their families." *Morrison*, 529 U.S. at 614. The Court's opinion highlighted two important points about analyzing legislative findings. One, such findings are not dispositive. The Court explained that "the existence of congressional findings is not sufficient, by itself, to sustain the constitutionality of Commerce Clause legislation." *Id.* Instead, "'[w]hether particular operations affect interstate commerce sufficiently to come under the constitutional power of Congress to regulate them is ultimately a judicial rather than a legislative question, and can be settled finally only by this Court.'" *Id.* (quoting *Lopez*, 514 U.S. at 557 n.2).[2]

Two, the weight of the findings depends in part on the "method of reasoning" that Congress employed. *Id.* at 615. In *Morrison*, the Court criticized the findings for "follow[ing] the but-for causal chain from the initial occurrence of violent crime (the suppression of which has always been

[2] To reduce the role of the judiciary in policing the outer bounds of Congress's power under the Commerce Clause, the government invokes *Gonzales v. Raich*, 545 U.S. 1, 22 (2005). *See* Response at 12. But *Gonzales* considered a statute that regulated activities that were "quintessentially economic." 545 U.S. at 25. The statute at issue here, by contrast, is "not economic or commercial in nature." *See* Response at 12.

the prime object of the States' police power) to every attenuated effect upon interstate commerce." *Id*. That reasoning "would allow Congress to regulate any crime as long as the nationwide, aggregated impact of that crime has substantial effects on employment, production, transit, or consumption." *Id.* And the reasoning could extend to "family law and other areas of traditional state regulation since the aggregate effect of marriage, divorce, and childrearing on the national economy is undoubtedly significant." *Id.* at 615–16. The Court rejected "the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Id.* at 617.

The findings in support of § 247 fail for the same reasons identified in *Morrison*. To the extent they even support a finding that arson of a religious property substantially affects interstate commerce, they rely on a "but-for causal chain from the initial occurrence" of the arson "to every attenuated effect upon interstate commerce." *See Morrison*, 529 U.S. at 615. This Court should reject the argument that Congress may regulate the truly local crime of arson of a religious property. *See id.* at 617.

Finally, the government is wrong to cite *United States v. Renteria*, 84 F.4th 591, 595 (5th Cir. 2023), for the proposition that "[t]he Fifth Circuit has recently held that the full reach of the Commerce Clause extends to purely local crimes when the government can establish the requisite connection to interstate commerce." Response at 15. *Renteria* involved a question of statutory interpretation; it did not address whether the statute was constitutional. Even if the Fifth Circuit determined that Congress intended to legislate to its full Commerce Clause powers, that determination alone does not render the statute constitutional.[3] "Under our written

[3] *Renteria* is distinguishable for another reason. It involved economic activity or interference with commercial enterprises in circumstances materially different from the local property damage charged here. *United States v. Renteria*, 84 F.4th at 594-95 (5th Cir. 2023) involved sex trafficking—commercial exploitation within an economic market that Congress expressly found substantially affects interstate and foreign commerce. *See* 22 U.S.C.

Constitution, … the limitation of congressional authority is not solely a matter of legislative grace." *Morrison*, 529 U.S. at 616.

4. If the Court decides that it must limit the reach of § 247(a)(1)'s plain language to comply with the Commerce Clause, the Court should consider whether due process permits such a judicial amendment. *See United States v. Reese*, 92 U.S. 214 (1875). The government is wrong to assert that *Reese* is no longer good law. *Contra* Response at 19. The Supreme Court has not overruled *Reese*'s holding that severance implicates due process when the statute is "a criminal statute" and severance "would necessitate such a revision of its text as to create a situation in which the statute no longer gave an intelligible warning of the conduct it prohibited." *See United States v. Raines*, 362 U.S. 17, 22 (1960). The Court should consider the requirements of due process if it determines that it must narrow the statute to comport with the Commerce Clause and, by doing so, leave standing "a criminal statute incapable of giving fair warning of its prohibitions." *Id.* at 24.

For the foregoing reasons, Mr. Pittman respectfully asks the Court to dismiss count two.

Respectfully submitted, this the 23rd day of November, 2026.

**Omodare B. Jupiter**
Federal Public Defender

*Michael L. Scott*
**Michael L. Scott** (MB # 101320)
Assistant Federal Public Defender
N. and S. Districts of Mississippi
200 S. Lamar St., Suite 200 North
Jackson, Mississippi 39201
Telephone: (601)948-4284
Facsimile: (601)948-5510
Email: mike_scott@fd.org

Attorney for Defendant

§ 7101(b)(12). Unlike that offense, § 247 does not interfere with a commercial enterprise or an interstate economic market. The government instead relies on downstream financial consequences of damage to a local place of worship.

## CERTIFICATE OF SERVICE

I, Michael L. Scott, certify that on November 23, 2026, this Reply was filed with the Clerk of the United States District Court for the Southern District of Mississippi, using the electronic case filing system, which in turn sent an electronic copy of this Motion to all attorneys of record in this case.

*Michael L. Scott*
**Michael L. Scott**
Attorney for Defendant